UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| L. WAYNE JACKSON, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-08-862 |
| | § | |
| CAL WESTERN PACKAGING CORPORATION, | § | |
| | § | |
| *Defendant*. | § | |

## ORDER

Pending before the court is defendant Cal Western Packaging Corporation's motion for summary judgment. Dkt. 28. After reviewing the defendant's motion, plaintiff's response, and applicable law, the court GRANTS defendant's motion for summary judgment.

## I. BACKGROUND

Plaintiff L. Wayne Jackson ("Jackson") filed suit against defendant Cal Western Packaging Corporation ("Cal Western"), alleging age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621–34 ("ADEA"), and the Civil Rights Act of 1991, 42 U.S.C. § 1981A, arising from the June 20, 2007, termination of Jackson's employment with Cal Western in Houston, Texas. Cal Western maintains that Jackson's termination resulted from alleged violations of a company policy prohibiting sexual harassment, which Jackson signed in 1999. Dkts. 1; 28, Ex. B–E. The policy applies to all employees and forbids activity such as sexual harassment and discrimination. Employees involved in the prohibited practices are subject to discharge. Dkt. 28, Ex. R.

Jackson's alleged behavior was brought to Cal Western management's attention on May 25, 2007, when Chief Operating Officer, Jimmy Phelps ("Phelps"), received a phone call from the Cal Western Controller. Dkt. 28. Four days later, Phelps began an internal investigation. Phelps interviewed several employees, who corroborated the allegations of misconduct and revealed further accusations of harassment against Jackson, including attempted physical contact and inappropriate references to the female anatomy and sexual acts. Dkt. 28, Ex. A. One employee provided Phelps with twelve emails sent by Jackson between March 21, 2006, and March 6, 2007, that included sexual references and jokes, as well as derogatory remarks about homosexuals. Dkt. 28, Ex. G. Additionally, Phelps interviewed a female vendor who occasionally visited the Cal Western plant between 2004 and 2007. She claimed that Jackson made graphic sexual comments to her and inappropriately touched her on two occasions. Dkt. 28, Exs. A, O. Because of Jackson's behavior, the vendor refused to work with Jackson. Dkt. 28, Ex. A. During the course of the investigation, Jackson angrily denied making the sexual remarks and threatened revenge against his accusers. Ultimately, Phelps placed Jackson on paid leave, pending an external investigation. Dkt. 28, Ex. A at 10–11.

On May 30, 2007, Phelps hired an attorney to conduct an external investigation into Jackson's purported conduct. This inquiry confirmed the findings of the internal investigation. Dkt. 28, Ex. A. When the attorney conducting the external investigation interviewed Jackson, Jackson retaliated with accusations against other employees, which were investigated and found to be meritless. Dkt. 28, Ex. M.

Based on the results of the two investigations, Phelps terminated Jackson's employment on June 20, 2007, for violating Cal Western's sexual harassment policy. At the time of termination, Jackson was sixty-nine-years-old and had worked for Cal Western for eight years. Dkt. 28. A forty-

two-year-old employee was promoted to replace Jackson. And, at the time Phelps terminated Jackson's employment, Phelps was fifty-two years of age. Dkt. 28, Ex. A.

In support of his claim that the discharge was motivated by age, Jackson maintains that, during a visit to a Cal Western office in Memphis, Tennessee, in the summer of 2006, Phelps referred to Jackson as an "old gray-haired fart," and promised Jackson's position to a younger employee when Jackson retired. Dkt. 28, Ex. R. Both Phelps and the employee to whom the comment purportedly was made deny the comment. Dkt. 28, Exs. A, Q. Jackson also claims that other Cal Western employees sent derogatory emails, but were not discharged for doing so. Dkt. 30.

## II. ANALYSIS

### A. Summary Judgment Standard

A timely motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). On a defendant's motion for summary judgment, the plaintiff "must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." FED. R. CIV. P. 56(e). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir.

2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required. *Id.*

"For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting FED. R. CIV. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the nonmovant cannot avoid summary judgment

4

simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Amer. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985). "Although summery judgment is not favored in claims of employment discrimination, it is nonetheless proper when there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." *Waggoner v. Garland*, 987 F.2d 1160, 1164 (5th Cir. 1993).

**B.     ADEA Standard**

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of an individual's age." 29 U.S.C. § 623(a)(1). "In employment discrimination cases, a plaintiff may present his case by direct or circumstantial evidence, or both." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002). If the plaintiff presents his case using only circumstantial evidence, then the court analyzes the discrimination claim under the *McDonnell Douglas* burden-shifting framework. *Sandstad*, 309 F.3d at 896 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817 (1973)).

Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case of discrimination. Specifically, a "plaintiff must show that '(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or

5

iii) otherwise discharged because of his age.'" *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576 (5th Cir. 2003) (quoting *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993)) (emphasis omitted). An ADEA plaintiff can show he was "otherwise discharged because of his age" by showing that he was treated less favorably than younger, similarly situated coworkers. *Okoye v. Univ. of Tex. Houston Health Science Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001).

If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to show a legitimate, nondiscriminatory reason for the employment action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07, 113 S. Ct. 2742 (1993); *Bauer v. Abermarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999). The defendant's burden of offering a legitimate, nondiscriminatory reason is "only one of production, not persuasion, involving no credibility assessments." *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003) (quoting *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000)). If the defendant produces a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to show the defendant's proffered nondiscriminatory reason is a pretext for age discrimination. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 351 (5th Cir. 2005) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)). "The plaintiff can survive summary judgment by producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation." *Sandstad*, 309 F.3d at 897.

**C.    As Applied**

Cal Western moves for summary judgment, arguing that Jackson cannot demonstrate a *prima facie* case of age discrimination because he was neither replaced by an employee outside of his protected group, nor treated less favorably than younger, similarly situated employees. Cal Western maintains that Jackson's termination was based on a legitimate, good faith belief that Jackson

repeatedly violated Cal Western's sexual harassment policy. And, finally, Cal Western contends that Jackson has not created a question as to whether Cal Western's reason for discharging Jackson was pretextual.

### 1. *Plaintiff's* **Prima Facie** *Case*

Jackson's employment was terminated when he was sixty-nine years of age, placing him within the protected class under the ADEA[1]. And, the parties do not dispute Jackson's qualification for the position he held at Cal Western. Thus, the first three elements of the *prima facie* case are met. Therefore, the court focuses on the fourth element.

Cal Western contends that Jackson cannot demonstrate the fourth element of the *prima facie* case because he was replaced by someone within the protected class. However, the Supreme Court has held that the fourth element of the *McDonnell Douglas* framework may be satisfied by showing that a plaintiff was replaced by a substantially younger employee who is also within the protected class. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312–13, 116 S. Ct. 1307 (1996) ("The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out *because of his age*"). The Supreme Court reasoned that, "[b]ecause the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." *Id.*

Although Jackson's replacement was forty-two years of age, and also a member of the protected class, the approximately twenty-seven year age difference between Jackson and his

---

[1] The ADEA provides that "[t]he prohibitions in this Act shall be limited to individuals who are at least 40 years of age." 29 U.S.C. § 631(a).

7

replacement is sufficient to find that Jackson was replaced by a significantly younger employee. Accordingly, the court finds that Jackson has established a *prima facie* case for discrimination under the ADEA.

## 2.     *Defendant's Legitimate, Nondiscriminatory Reason*

Having established the *prima facie* case, the burden shifts to Cal Western to articulate a legitimate, nondiscriminatory reason for terminating Jackson's employment. When employees are terminated because of misconduct, courts should not weigh the truth or falsity of the allegations, but must instead evaluate whether the employer believed the allegations in good faith, and whether a termination decision was based on that belief. *Waggoner*, 987 F.2d at 1165–66.

Cal Western claims that Jackson was fired because he violated the organization's sexual harassment policy. In support of its position, Cal Western produces its employment policy, which Jackson signed in 1999, and affidavits and emails, gathered in the internal and external investigations, to support the perceived frequency and degree of Jackson's misconduct. Cal Western relied on this information in making its decision to terminate Jackson's employment. In contrast, Jackson merely denies making the offensive statements and engaging in the prohibited conduct. Further, Jackson admits in his reply brief that Cal Western "appears to have articulated a non-discriminatory reason for [his] termination." Dkt. 30.

Thus, the court finds that Cal Western has met its burden of producing a legitimate, nondiscriminatory reason for terminating Jackson's employment by detailing Jackson's purported violations of Cal Western's sexual harassment policy. *See St. Mary's Honor Ctr.*, 509 U.S. at 506–07; *West,* 330 F.3d at 385; *see also Denson v. Meadwestvaco Corp.*, No. 04-CV-337-M, 2005 WL 2179116, at *3–4 (N.D. Tex. Sept. 8, 2005) (finding that a company's reasonable belief that employee violated the sexual harassment policy, based on an investigation, satisfied burden of

production of a legitimate, nondiscriminatory reason). Accordingly, the burden shifts responsibility to Jackson to show a genuine issue as to whether Cal Western's articulated reason is pretextual.

*3.* ***Pretext***

In order to prevail in a claim of discrimination, a plaintiff must prove by a preponderance of the evidence that his employer's reason for termination was not true, but a pretext for discrimination. *See Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 143, 120 S. Ct. 2097 (2000). This burden may be met by showing that an employer's proffered explanation is unworthy of credence. *Id.* The court may also consider inferences from plaintiff's *prima facie* case in determining whether an employer's explanation is pretextual. *Id.* (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255, n.10, 101 S. Ct. 1089 (1981).

However, in the context of a motion for summary judgment, "after a defendant employer has met its burden of production, an employee plaintiff, like any other civil plaintiff, must [only] demonstrate that there is a material issue of disputed fact as to discrimination, the ultimately question *vel non*." *Patrick v. Ridge*, 394 F.3d 311, 315–16 (5th Cir. 2004). "[A] plaintiff can avoid summary judgment if the evidence taken as a whole, (1) creates a fact issue as to whether each of the employer's stated reasons were what actually motivated the employer, and (2) creates a reasonable inference that age was a determinative factor in the actions of which the plaintiff complains." *Hall v. Gilman, Inc.*, 81 F.3d 35, 37 (5th Cir. 1996).

"The ADEA was not . . . intended to transform the courts into personnel managers. The ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated." *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507–08 (5th Cir. 1988). When the employee's discharge is based on accusations of misconduct,

9

>[t]he real issue is whether the employer reasonably believed the . . . allegation and acted on it in good faith, or to the contrary, the employer did not actually believe the co-employee's allegation but instead used it as a pretext for an otherwise discriminatory dismissal. Thus, the inquiry is limited to whether the employer believed the allegation in good faith and whether the decision to discharge the employee was based on that belief.

*Waggoner*, 987 F.2d at 1165–66. Conclusory allegations and mere speculation of age discrimination are insufficient to create an issue that will preclude summary judgment. *Id.* at 1166.

Here, Jackson claims that Cal Western's legitimate, nondiscriminatory reason for termination is pretextual because of the comment purportedly made by Phelps and Cal Western's failure to terminate other employees for sending offensive emails.

For a statement to be discriminatory, it must: (1) relate to the plaintiff's protected class; (2) occur proximate in time to the adverse employment decision; (3) be made by an individual with authority over the employment decision; and (4) relate to the employment decision. *Patel v. Midland Mem. Hosp. & Med. Ctr.*, 298 F.3d 333, 343–44 (5th Cir. 2002) (citing *Rubinstein v. Adm'rs of the Tulane Educ. Fund* 218 F.3d 392, 400–01 (5th Cir. 2000)). If a statement does not meet these criteria, it is considered a harmless "stray remark." *Patel*, 298 F.3d at 343; *see also Waggoner*, 987 F.2d at 1166 (finding that employer's reference to employee as "old fart" and statements that younger employees could do better work were not sufficient to establish discrimination).

An offensive comment, alone, does not support a finding of discrimination; there must be a nexus between the statement and the employment decision. *See Scales v. Slater*, 181 F.3d 703, 712 (5th Cir. 1999) ("Stray remarks with no connection to an employment decision cannot create a fact issue regarding discriminatory intent and are insufficient to defeat summary judgment." ); *Boyd v. State Farm Ins.*, 158 F.3d 326, 329–30 (5th Cir. 1998). While frequent and specific comments may be relevant to discrimination or animus, statements that are "vague and remote in time" are not. *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655–56 (5th Cir.1996) (finding that statements concerning

an employee "getting long in the tooth" made sixteen months before discharge were too remote to support discrimination); *cf. Boyd*, 158 F.3d at 329–30 (holding that a racial slur made approximately one year before an employee's termination was a stray remark).

Additionally, the discriminatory comments must be unambiguous, and must reasonably support the conclusion that the protected class was a determinative factor in the employee's termination. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222 (5th Cir. 2001) (citing *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 303 (5th Cir. 2000)).

Assuming *arguendo* that Phelps did refer to Jackson as an "old gray-haired fart," the comment was clearly made by a company official and, giving deference to Jackson's interpretation, could be construed as relating to Jackson's age. However, the statement was made one year prior to Jackson's termination and, thus, is not proximately timed with the employment decision. Further, Jackson offers no other allegations of age-related animus or repetition of similar statements occurring within this one-year period. Moreover, a nexus between the content of the comment and the adverse employment action is lacking. Any reference to replacing Jackson with a younger employee concerned Cal Western's plans *after* Jackson's retirement, and did not suggest that Jackson would be terminated. Dkt. 28, Ex. O. The year-old comment is vague, remote, and does not suggest that age was a motivating factor in the termination of Jackson's employment or that Cal Western's legitimate, nondiscriminatory reason is a pretext for discrimination.

Moreover, it does not follow that Cal Western's reason for discharging Jackson was pretextual because other employees who allegedly forwarded offensive emails were not terminated. Jackson's employment was terminated based on the totality of his actions, including numerous allegations of verbal and physical harassment. Jackson does not argue or provide evidence that the other employees engaged in similar behavior, thus he cannot compare his overall conduct to the acts

11

of the other employees. Ultimately, Jackson's arguments amount to mere speculation that he was discharged because of his age.

### III. CONCLUSION

Jackson established a *prima facie* case of discrimination under the ADEA, and Cal Western has produced a legitimate, nondiscriminatory reason for Jackson's termination. However, Jackson has failed to introduce evidence from which pretext can be inferred, nor can pretext be implied from the facts and circumstances giving rise to the *prima facie* case. Phelps's comment purportedly was made one year before Jackson's discharge for harassment and is properly classified as a stray remark. And, despite the fact that other employees were not discharged for forwarding emails, there is no evidence to suggest that they were engaged in the same level of egregious and pervasive conduct that prompted Jackson's termination.

In conclusion, Jackson has not met the burden of raising an issue as to whether Cal Western's legitimate, nondiscriminatory reason for discharge was a pretext for discrimination. Therefore, Cal Western's motion for summary judgment is GRANTED.

Signed at Houston, Texas on June 3, 2009.

_____
Gray H. Miller
United States District Judge

TO ENSURE PROPER NOTICE, EACH PARTY RECEIVING THIS ORDER SHALL
FORWARD IT TO EVERY OTHER PARTY AND AFFECTED NONPARTY